UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BRANDY B., | ) |
| Plaintiff(s) | ) |
| vs. | ) Case No. 4:25-CV-394 SRW |
| LELAND DUDEK,[1] Commissioner of Social Security Administration, | ) |
| Defendant(s). | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on review of an adverse ruling by the Social Security Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in support of the Complaint. ECF No. 9. Defendant filed a Brief in Support of the Answer. ECF No. 12. Plaintiff filed a Reply. ECF No. 13. The Court has reviewed the parties' briefs and the entire administrative record, including the transcripts and medical evidence. Based on the following, the Court will reverse the Commissioner's denial of Plaintiff's application and remand the case for further proceedings.

---

[1] At the time this case was filed, Leland Dudek was the Commissioner of Social Security. Frank Bisignano became the Commissioner in May 2025. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name, and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Frank Bisignano for Leland Dudek in this matter.

I.   **Factual and Procedural Background**

On December 13, 2022, Plaintiff Brandy B. protectively filed an application for disability insurance benefits under Title II, 42 U.S.C. §§ 401, *et seq*. and supplemental security income under Title XVI, 42 U.S.C. §§ 1381, *et seq.*, with an alleged onset date of August 15, 2017. Tr. 269-81. The onset date was later amended to June 8, 2021. Tr. 46, 300. Plaintiff's applications were denied upon initial consideration and reconsideration. Tr. 165-74, 177-84. On November 7, 2023, she requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 188-89.

Plaintiff appeared for an in-person hearing, with the assistance of counsel, on March 7, 2024. Tr. 41-72. Plaintiff testified concerning her disability, daily activities, and functional limitations. *Id*. During the hearing, the ALJ received testimony from vocational expert ("VE") Rhonda Blackstock. *Id*. at 66-71. On March 29, 2024, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 16-40. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. Tr. 263-65. On January 28, 2025, the Appeals Council denied Plaintiff's request for review. Tr. 1-7. Accordingly, the ALJ's decision stands as the Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

II.   **Legal Standard**

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

2

than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe impairment "which significantly limits claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§

3

416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work which exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At

4

Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

### III.   The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2022. Tr. 21. Plaintiff has not engaged in substantial gainful activity since June 8, 2021, the amended alleged onset date. *Id*. Plaintiff has the following severe impairments: "major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder, panic disorder with agoraphobia, obesity, chronic obstructive pulmonary disease, rheumatoid arthritis, opioid use disorder and neuropathy." Tr. 21-22. Plaintiff does not have an impairment or combination of impairments that meets or medically

5

equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 22. The ALJ found Plaintiff had the following RFC through the date last insured:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can occasionally climb ramps, stairs, ladders, ropes and scaffolds, frequently stoop, occasionally kneel, crouch and crawl, can frequently reach, handle, finger and feel using the bilateral upper extremities. The claimant must avoid concentrated exposure to extreme heat, extreme cold, wetness, humidity, vibration, as well as fumes, odors, dusts, gases, poor ventilation, and must avoid even moderate exposure to hazards such as moving machinery and unprotected heights. She can perform only simple, routine, and repetitive tasks, requiring only simple work-related decisions, with few changes in the routine work setting, and no more than occasional interaction with the general public. The claimant can maintain the concentration required to perform simple tasks, remember simple work like procedures, and make simple work-related decisions, can stay on task and, thereby, meet production requirements.

Tr. 25-26.

The development of Plaintiff's past relevant work was expedited because she was under the age of 50 and had a number of different jobs.[2] Tr. 32. *See* also Tr. 52, 67. Plaintiff's representative did not object to the ALJ expediting the past relevant work development. Tr. 52. The ALJ determined Plaintiff was born on August 30, 1979, and was 37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. Tr. 33. Plaintiff had a limited education. *Id.* The ALJ found that transferability of job skills was not an issue because Plaintiff did not have past relevant work. *Id.*

Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform, including Maker (*DOT* No. 209.587-034, light work, with 60,000 jobs in the national economy); Office Helper (*DOT* No. 239.567-010, light work, with 101,000 jobs in the national

---

[2] Under the expedited process set forth in 404.1520(h) and 416.920(h) of the Code of Federal Regulations, adjudicators have the discretion to proceed to the fifth step of the sequential evaluation process when they have insufficient information about a claimant's past relevant work history to make the findings required at step 4.

economy); and Photocopy Machine Operator (*DOT* No. 207.685-014, light work, with 37,000 jobs in the national economy). *Id*. The ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, from August 15, 2017, through the date of this decision. Tr. 34.

## IV.   Discussion

Plaintiff argues the ALJ erred by failing to properly evaluate the medical opinions of her treating physician, Dr. Ashley Harvin, and the Commissioner's psychological consultant, Dr. Steven Akeson. Plaintiff states that the "focus of the present appeal . . . relates only to [her] alleged mental impairments." *Id.* at 2. Because Plaintiff narrows her arguments to the ALJ's evaluation of her mental impairments and does not contest the evaluation of her physical impairments, the Court will limit its discussion to the ALJ's RFC assessment of Plaintiff's mental impairments only.

### A.   Evaluation of Dr. Ashley Harvin's Medical Opinion

As to Dr. Harvin's medical opinion, Plaintiff argues the ALJ "did not articulate how the factor of 'consistency' was considered and the evaluation of the factor of 'supportability' was itself not well-supported." ECF No. 9 at 5. Plaintiff argues "the ALJ made no explicit comparison between Dr. Harvin's medical findings and any supposedly contrary evidence in the record." ECF No. 9 at 7. Further, Plaintiff takes issue with the ALJ's failure to discuss why moderate limitations in her mental functioning would be inconsistent with absenteeism from work. *Id*. As to the supportability factor, Plaintiff argues "the ALJ's assertion that the opinion is "devoid" of any support for Dr. Harvin's findings is not factually accurate." ECF No. 9 at 8. Plaintiff points to the fact that Dr. Harvin discussed her medical history, clinical findings, signs

7

and symptoms of her impairments, and prescribed treatments. *Id.* (citing 415-511, 973, 1271-1366, 1367-1400, 1941-88, 2129-98, 2342-67, 2378-2470).

On February 8, 2023, Plaintiff's treating physician, Dr. Ashley Harvin, completed a non-examining Mental Medical Source Statement (MSS). Tr. 972-74. Dr. Harvin identified Plaintiff's diagnoses as opioid use disorder in sustained remission, panic disorder with agoraphobia, posttraumatic stress disorder, and major depressive disorder. Tr. 972. Dr. Harvin opined that Plaintiff had no more than mild to moderate limitations in the areas of social interaction, adaption, and sustained concentration and persistence. Tr. 972-73. She further indicated that Plaintiff had no significant restrictions in most areas of sustained concentration and persistence and all areas of understanding and memory. *Id*. The only marked limitation noted was Plaintiff's inability to travel in unfamiliar places or use public transportation. Tr. 973. Dr. Harvin did not opine that Plaintiff would be "off task" due to her symptoms or that they would interfere with the attention needed to perform simple tasks. Tr. 972. Although, Dr. Harvin did indicate that Plaintiff would likely be absent from work four or more days per month. *Id*.

The ALJ considered Dr. Harvin's opinion to be unpersuasive and explained his reasoning as follows:

> In February 2023, the claimant's treating physician, Ashley Harvin, M.D., provided a medical opinion as to the claimant's mental functioning. Dr. Harvin did not identify more than moderate limitations in the claimant's mental functioning, except for a marked limitation in traveling to unfamiliar places or using public transportation. However, despite the mild to moderate findings of mental limitations, Dr. Harvin opined that the claimant would be absent from work four or more days per month. This opinion is not persuasive, as it is devoid of any supporting explanation or rationale for the proposed mental limitations. Moreover, the conclusion that the claimant does not have more than moderate limitations in her mental functioning (except as noted above) is inconsistent with a finding that she will be absent from work for four or more days per month.

Tr. 30 (internal citations omitted).

8

Claims filed after March 27, 2017, like Plaintiff's, require the ALJ to evaluate medical opinions pursuant to 20 C.F.R. § 404.1520c. This provision provides that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). Rather, an ALJ is to evaluate the persuasiveness of any opinion or prior administrative medical finding by considering the: (1) supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors. 20 C.F.R. § 404.1520c(c).

Supportability and consistency are the most important factors; therefore, an ALJ must explain how he or she considered these factors in the decision. 20 C.F.R. § 404.1520c(b)(2). The more relevant the objective medical evidence and supporting explanations presented by a medical source are to *support* his or her medical opinions or prior administrative medical findings, and the more *consistent* medical opinions or prior administrative medical findings are with other medical sources and nonmedical sources, "the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. An ALJ may, but is not required to, explain how he or she considered the remaining factors. *Id*. *See Brian O. v. Comm'r of Soc. Sec.*, 2020 WL 3077009, at *4-5 (N.D.N.Y. June 10, 2020) ("Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how he or she considered the medical opinions' and 'how persuasive he or she finds all of the medical opinions.'") (quoting §

9

404.1520c(a), (b), alterations omitted). An ALJ must articulate how persuasive he found all medical opinions and prior administrative medical findings in a claimant's case record. § 404.1520c(b).

Here, the Court finds the ALJ properly considered Dr. Harvin's statements. "The paragraph concerning the ALJ's evaluation of [a medical] opinion cannot be read in isolation but must be read as part of the overall discussion of plaintiff's RFC assessment." *Trosper v. Saul*, 2021 WL 1857124, at *5 (E.D. Mo. May 10, 2021); *see also Krieg v. Kijakazi*, 2023 WL 4824558, at *9 (E.D. Mo. July 27, 2023). In evaluating Dr. Harvin's medical source statement, the ALJ considered Plaintiff's medical history, including her treatment with Dr. Harvin through COMTREA Health Center, in evaluating the consistency. Tr. 29-31.

The ALJ carefully considered Plaintiff's treatment records from February 2022 through August 2023 and found that Plaintiff's mental symptoms were well controlled with medication. Tr. 29-31. In Plaintiff's first mental examination record with Dr. Harvin in February 2022, Plaintiff was opined to be "alert, unkempt, tearful, [and] distraught," but still with normal speech, goal-directed thought processes, grossly intact memory and attention. Tr. 415. One month later in her follow-up examination, much better than in February, Dr. Harvin found Plaintiff's appearance "pleasant, cooperative, engaged" and that Plaintiff had "good hygiene." Tr. 420. By April 2022, Plaintiff stated that things had been "pretty good," she had "less crying spells, reduced anxiety," and "taking clonazepam 3 times per day [was] very helpful." Tr. 426. In May 2022, Plaintiff reported "her anxiety and panic symptoms [were] well controlled," "she [was] able to go out in public," and was able to manage her anxiety of being looked at by others in the public. Tr. 434. In the July 2022 examination, Dr. Harvin noted Plaintiff "was smiling during interview." Tr. 464. Plaintiff continued to report "her anxiety [was] well controlled with

10

her current medications," and she was "able to get out of the house when she need[ed] to run errands" such as "taking her mother to medical appointments." *Id*. By August 2022, Plaintiff reported she was doing "a lot better" and had "significant reduction in anxiety, restlessness, and panic attacks." Tr. 1276. Plaintiff stated that she had been "doing more" and "more active around the house." *Id*. Two months later, she reported that "her medications [were] working well for her PTSD and panic symptoms," and "continue[d] to do well." Tr. 1299. In March and April 2023, Plaintiff stated she was "okay," her anxiety and depression were "manageable" and "well controlled," and counseling was helpful. Tr. 1378, 2130. In all fourteen examinations with Dr. Harvin and other doctors at COMTREA Health Center since March 2022, Plaintiff appeared to be "cooperative, engaged, [with] good hygiene," and exhibiting normal speech, goal-directed thought processes, intact memory and attention, and normal mood and affect. Tr. 420-21, 427, 443, 465, 1277, 1301, 1379-80, 1968, 2132, 2140, 2175, 2184-85, 2345.

      Plaintiff's treatment records with Dr. Harvin evidenced that her mental impairments were consistently well-controlled and managed, and demonstrated a steady improvement in symptoms and functioning after she began regular treatment and medication management. As reflected in Dr. Harvin's notes, Plaintiff's condition improved from being tearful and distraught in February 2022 to significant reductions in anxiety, restlessness, and panic attacks by April 2022. Tr. 415, 420, 426. Throughout 2022 and 2023, Plaintiff consistently reported that her medications were effective, and she was able to leave the house, run errands, and accompany her mother to medical appointments. Tr. 434, 464, 1276, 1299.  Also noteworthy, Dr. Harvin's MSS was drafted in February 2023, but in the subsequent two months Dr. Harvin noted that Plaintiff "[did] feel well," "she [was] managing her stress well," and "her anxiety [was] well controlled with current medications." Tr. 1378, 2130.

11

Thus, as the ALJ determined, Plaintiff's improvement in social and daily functioning were inconsistent with Dr. Harvin's opinion related to her frequency of absenteeism. In other words, Dr. Harvin's own treatment records were contradictory to her MSS. Consequently, the Court does not find the ALJ erred in discussing the consistency factor.

In addressing the supportability factor, an ALJ may note that the physician's own treatment notes do not support the physician's opinion, that the physician's opinion stems from a checklist, that the physician did not consider certain evidence, that the physician did not examine the claimant, or that the physician did or did not provide a detailed explanation for the opinion. *Starman v. Kijakazi*, 2021 WL 4459729, at *4 (E.D. Mo. Sept. 29, 2021) (listing cases). An ALJ "is free to accept some, but not all, of a medical opinion." *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022). The ALJ may consider internal inconsistencies within one expert's opinion. *Clay v. Barnhart*, 417 F.3d 922, 930 (8th Cir. 2005) (noting that "it is the ALJ's role to resolve conflicts in experts' opinions," including "conflicts … internal to one expert's opinion"). "A treating physician's own inconsistency may undermine his opinion and diminish or eliminate the weight given his opinion." *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015) (citing *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006)).

Here, the ALJ's discussion of supportability is confined to his determination that Dr. Harvin's own opinions on Plaintiff's mental limitations did not support the four or more days absenteeism that Plaintiff would have per month. Tr. 30. Such consideration is entirely appropriate. *See Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (upholding the ALJ's conclusion that an opinion was only partially persuasive, in part, because it was unsupported by the doctor's own "routinely normal" examinations of the claimant); *Diana G v. Kijakazi*, 2024

12

WL 50805, at *6 (E.D. Mo. Jan. 4, 2024) (holding that, in evaluating supportability, an ALJ may properly consider that the physician's own treatment notes do not support the opinion).

The absenteeism statement in Dr. Harvin's opinion consists of two checkmarks on a standardized form. Tr. 972. Dr. Harvin did not provide any treating opinion or explanations for her belief that Plaintiff would be absent from work four or more days per month. *Id*. In other abilities that may affect Plaintiff's attendance, such as "the ability to maintain attention and concentration for extended periods," "the ability to perform activities within a schedule, *maintain regular attendance*, and be punctual within customary tolerances," and "the ability to sustain an ordinary routine without special supervision," Dr. Harvin did not check any limitation box, but wrote in the margin that "others that are not checked" have "no significant restrictions." Tr. 973 (emphasis added). Further, Dr. Harvin noted that Plaintiff would not be "off task" due to symptoms that would interfere with the attention needed to perform even simple tasks. Tr. 972. The ALJ is entitled to find Dr. Harvin's MSS inconsistent based on such internal conflicts.

Conclusory statements "not supported by treatment notes or a thorough analysis" has been found by this Court as unpersuasive. *Markland v. Colvin*, 127 F. Supp. 3d 1031, 1045 (E.D. Mo. 2015) (noting that an ALJ was entitled to give little weight to the conclusory physician opinion not supported by treatment notes or thorough analyses). Dr. Harvin's opinion that Plaintiff would be absent from work four or more days per month is conclusory. There is neither medical evidence in Dr. Harvin's opinion nor evidence in other medical sources on record to support such frequency of absences. Tr. 972-74.

For these reasons, the Court does not find that the ALJ erred in evaluating the persuasiveness of Dr. Harvin's medical opinion.

13

### B.      Evaluation of Dr. Steven Akeson's Medical Opinion

Plaintiff contends the ALJ "failed to explain why a more restrictive limitation on task complexity identified by Dr. Akeson was not included in the RFC, even though the ALJ found Dr. Akeson's opinion was 'persuasive.'" ECF No. 9 at 5. Plaintiff asserts that the ALJ failed to include Dr. Akeson's RFC assessment that Plaintiff "retains sufficient capacity to carry out two-step commands with adequate persistence and pace." *Id.* at 10; Tr. 145. Plaintiff argues "there is a substantive difference between simple work broadly [as determined by the ALJ,] and simple work limited to only 'two-step commands.'" *Id.* Consequently, Plaintiff reasons that the three jobs identified by the ALJ – marker, office helper, and photocopy machine operator – "are not compatible with the 'two-step command' restriction identified by Dr. Akeson." *Id.* at 11.

On October 12, 2023, Dr. Akeson, Ph.D., a licensed psychologist and agency consultant, completed a Psychiatric Review Technique (PRT) at the reconsideration level. Tr. 139-40, 143-45. Dr. Akeson described Plaintiff's depressive disorder, anxiety disorder, substance addiction disorder, and trauma-related and stressor-related disorders to be "severe." Tr. 139. He found "moderate" functional limitations in Plaintiff's ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; adapt or manage oneself; understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or in proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms; interact appropriately with the general public; and respond appropriately to changes in the work setting. Tr. 140, 144-45. Under the section allowing for "Additional Explanation," Dr. Akeson noted that Plaintiff "can understand, remember, and carry out a two-step command involving simple instructions" and "retains

14

sufficient mental capacity to carry out two-step commands with adequate persistence and pace, but she would struggle with detailed or complex instructions." Tr. 145.

In addressing Dr. Akeson's PRT, the ALJ wrote:

> [T]he undersigned is persuaded by the findings of the State Disability Determination psychological consultants, who found that the claimant retained the ability to complete simple, repetitive work away from the public, concentrate and work at a competitive work pace on simple work tasks. These findings are persuasive, as they are consistent with the claimant's reported struggle with depression, anxiety, and post-traumatic stress disorder symptoms. However, the grossly normal mental status examinations throughout the relevant period, as discussed above, do not support greater mental limitations.

Tr. 31-32 (internal citation omitted).

The Commissioner argues that the ALJ based his mental RFC finding on the overall record and was not required to adopt verbatim any particular medical opinion or finding in the record when determining RFC. ECF. No. 12 at 9. However, Plaintiff is not arguing for the adoption of every limitation in Dr. Akeson's opinion. Rather, Plaintiff's position is that when an ALJ finds a medical opinion persuasive, the ALJ must explain why the RFC does not include the limitations in the persuasive medical opinion. ECF. No. 9 at 9-10.

The Court recognizes that "an ALJ is not required to discuss every piece of evidence submitted." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). However, the ALJ is not entitled to "pick and choose only evidence in the record buttressing his [or her] conclusion." *Nelson v. Saul*, 413 F. Supp. 3d 886, 916 (E.D. Mo. 2019) (internal quotation marks omitted).

Social Security Ruling 96-8p requires that in assessing the RFC, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Soc. Sec. Admin., Policy Interpretation Ruling Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL

15

374184, at *7 (July 2, 1996). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.*

Dr. Akeson found Plaintiff "can understand, remember, and carry out a two-step command involving simple instructions" and "retains sufficient mental capacity to carry out two-step commands with adequate persistence and pace, but she would struggle with detailed or complex instructions." Tr. 145. The ALJ found Dr. Akeson's opinion persuasive. Tr. 31-32. The ALJ adopted an RFC without including the limitations of two-step instructions and commands in conflict with Dr. Akeson's persuasive opinion. The ALJ does not explain why these limitations were not included.

> [C]ourts have found remand required where an ALJ finds a medical opinion persuasive yet declines to include some of the limitations found in that opinion in that RFC and does not explain why. *See, e.g. Gann v. Berryhill*, 864 F.3d 947, 952 (8th Cir. 2017) (remanding where the ALJ gave "significant weight" to two medical opinions yet failed to include limitations from those opinions in the RFC or in the hypothetical question posed to the VE)); *Wolynski v. Kijakazi*, 2022 WL 1521619, at *9 (E.D. Mo. May 13, 2022) (finding error and remanding where the ALJ found the opinion of the non-examining state agency medical consultant "persuasive," yet omitted from the RFC the opined limitation of one- or two-step tasks and instructions, without explaining why); *Batson v. Kijakazi*, 2022 WL 501405, at *4 (W.D. Mo. Feb. 18, 2022) ("Because the ALJ found Dr. Allen's opinions to be persuasive, supported by objective evidence, and consistent with the record, the ALJ should have included all limitations set forth by Dr. Allen. Alternatively, if the ALJ chose not to include any of Dr. Allen's limitations, the ALJ should have explained why any excluded limitation was not adopted. Here, the ALJ failed to do either. Thus, the RFC is not supported by substantial evidence."); *Berry v. Kijakazi*, 2021 WL 4459699, at *9 (E.D. Mo. Sept. 29, 2021) (finding error and remanding where the ALJ omitted from the RFC, without discussion, a limitation to two-step commands that was included in a non-examining psychological consultant's opinion; stating, "Because the ALJ did not provide a reason for rejecting [the psychological consultant's] opinion on the two-step command limitation—while including [the psychological consultant's] other opined limitations in the RFC—the Court would be required to determine in the first instance whether there was substantial evidence to support the ALJ's decision to reject that limitation. It is not within the Court's purview to speculate why the ALJ may have rejected certain evidence."); *Masden v. Saul*, 2021 WL 3172934, at *2 (W.D. Mo. July 27, 2021) (noting that under SSR 96-8p, "If the RFC conflicts with an opinion from a medical source, the ALJ must explain why the opinion

16

was not adopted"; finding remand require where "[t]he ALJ did not explain why, having found Dr. Sullivan's opinions 'persuasive,' she did not include [some of the] limitations [from the opinions] in the RFC").

*Bedore v. Kijakazi*, 2023 WL 6064854, at *5 (E.D. Mo. Sept. 18, 2023) (cleaned up).

The Eighth Circuit has also recognized that in some cases, the ALJ's rejection of evidence without giving reasons renders this Court "unable to determine whether any such rejection is based on substantial evidence." *Jones v. Chater*, 65 F.3d 102, 104 (8th Cir. 1995). *See also Lutz v. Kijakazi*, 2022 WL 782300, at *5 (E.D. Mo. Mar. 15, 2022) (finding that "the absence of any explanation of why the ALJ disregarded Dr. Stalker's limitation to one-to-two step tasks, when she accepted all of the other limitations in Dr. Stalker's opinion, requires remand"); *Carey v. O'Malley*, 2024 WL 4238691, at *6 (E.D. Mo. Sept. 19, 2024) (finding error and remanding where the ALJ explicitly found the examining physician's opinion persuasive, "yet omitted from the RFC a limitation from that opinion"); *Challenger v. O'Malley*, 2024 WL 4274854, at *4 (E.D. Mo. Sept. 24, 2024) (finding error and remanding where the ALJ found the physician's opinion persuasive but "did not articulate why he believed [p]laintiff was not entitled to the limitation").

The reason why a remand is necessary in such situation is that by not addressing the reason for rejecting a limitation in a physician's persuasive opinion, the ALJ renders this Court "unable to determine whether any such rejection is based on substantial evidence." *Jones*, 65 F.3d at 104. It is not in this Court's purview to speculate why the ALJ did not include the limitation, only that the ALJ did not provide a basis for omitting the limitation. *Challenger*, 2024 WL 4274854, at *4.

> Because the ALJ did not provide a reason for rejecting [the State agent's] opinion on the two-step command limitation – while including [the agent's] other opined limitations in the RFC – the Court would be required to determine in the first instance whether there was substantial evidence to support the ALJ's decision to

17

> reject that limitation. It is not within the Court's purview to speculate why the ALJ may have rejected certain evidence. While the ALJ may have considered and for valid reasons rejected the two-step command limitation of [the agent's] opinion, the Court is unable to determine whether any such rejection is based on substantial evidence, given the ALJ's complete failure to address it. When an ALJ's decision is unclear as to the medical basis for his assessment of the degree to which the claimant's impairments affect [his] RFC, the matter must be remanded for further proceedings.

*Berry v. Kijakazi*, 2021 WL 4459699, (E.D. Mo. Sept. 29, 2021)

To note, this Court does not always remand when the ALJ omits two-step command limitation in RFC but does remand when an ALJ fails to explicitly explain why the specific two-step command limitation was not included. In *Walsh v. Bisignano*, this Court did not find error when the ALJ omitted the two-step command limitation from a "mostly persuasive" state agent's opinion because the ALJ explicitly reasoned that the "two-step command [limitation]" was "too vague to be useful" and "not a proper vocational term." 2025 WL 2771468, at *4 (E.D. Mo. Sept. 29, 2025). Similarly, in *Segar v. O'Malley*, the ALJ found the state agent's psychological consultant "mostly persuasive." 2024 WL 3638255, at *6 (E.D. Mo. Aug. 1, 2024). The consultant "opined that plaintiff could carry out two-step commands with adequate persistence and pace, but would struggle with detailed or complex instructions." *Id*. (internal citation omitted). The Court found no error in the ALJ's determination in excluding the two-step limitation where the ALJ explicitly explained that the consultant's findings were "generally well supported and consistent with the record, however his limitation to two-step tasks supported that plaintiff had a moderate impairment in understand, remember, or apply information." *Id*. (internal citation omitted).

Here, in contrast, the ALJ did not provide sufficient reason and explicit explanation for rejecting Dr. Akeson's opinion on the two-step command limitation. The ALJ found Dr. Akeson's opinion "that the claimant retained the ability to complete simple, repetitive work away

18

from the public, concentrate and work at a competitive work pace on simple work tasks" persuasive. Tr. 31. The ALJ reasoned that these findings "are consistent with the claimant's reported struggle with depression, anxiety, and post-traumatic stress disorder symptoms." Tr. 31-32. Ultimately, the ALJ did not include the two-step command limitation in the RFC determination and only stated that "the grossly normal mental status examinations throughout the relevant period, as discussed above, do not support greater mental limitation." Tr. 32. This is a vague and conclusory statement that renders this Court unable to determine whether the rejection of two-step command limitation is based on substantial evidence. It is not as clear as the ALJ reasoning in *Walsh* and *Segar* where the ALJs pointed explicitly and specifically to the "two-step command" limitation when reasoning for the rejection.

For all the foregoing reasons, the Court finds that the ALJ's evaluation on Dr. Akeson's opinion is not supported by substantial evidence.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner of Social Security is **REVERSED** and that this case is **REMANDED** under 42 U.S.C. 1383(c)(3) and Sentence Four of 42 U.S.C. § 405(g) for reconsideration and further proceedings consistent with this opinion.

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Frank Bisignano for Leland Dudek in the court record of this case.

So Ordered this 19th day of November, 2025.

_____
STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE